**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MISAEL CORDERO, | : |
| Plaintiff, | : Civil Action No. 10-1139 (JAP) |
| v. | : **O P I N I O N** |
| ABU AHSAN, et al., | : |
| Defendants. | : |

**APPEARANCES:**

Misael Cordero, Pro Se
257533
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

**PISANO**, District Judge

Plaintiff, Misael Cordero, currently confined at the New Jersey State Prison, Trenton, New Jersey, has submitted this civil complaint which alleges violations of his constitutional rights, and seeks damages pursuant to 42 U.S.C. § 1983. Plaintiff has not paid the filing fee, and seeks permission to proceed in forma pauperis. Based on Plaintiff's affidavit of indigence, this Court will grant his request.

At this time, the Court must review the complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2).

For the following reasons, the complaint will be dismissed, without prejudice.

## BACKGROUND

Plaintiff seeks to sue various medical staff at the New Jersey State Prison concerning his care while housed there. Plaintiff states that in the summer of 2008, he injured his right shoulder while lifting weights. The nurse practitioner, defendant Donique, gave Plaintiff an injection, naproxen, muscle relaxers, and ordered x-rays. Plaintiff stopped taking the naproxen because it caused him stomach problems and other side effects. The x-rays were completed.

Thereafter, Plaintiff was seen by defendant Dr. Ahsan and asked for a different pain killer. Dr. Ahsan told Plaintiff that he didn't have anything to prescribe Plaintiff besides the naproxen. The doctor also informed Plaintiff that the x-rays showed that he had tendonitis. The doctor prescribed, and Plaintiff received, physical therapy. Plaintiff's pain continued throughout the physical therapy due to him not being prescribed a pain killer medication. Plaintiff states that his right shoulder was grinding inside and coming in and out of the socket. The physical therapist told Plaintiff and Dr. Ahsan that physical therapy was not going to help, and suggested that Plaintiff be seen by a specialist.

Plaintiff was later called to the clinic and was told that the request to see a specialist had been denied. Plaintiff continued to experience, and complain of pain which affected his daily life. He was told by defendant Donique that he would be all right, just to keep using the arm so it wouldn't get stiff.

Plaintiff kept complaining about arm pain, he was given an EKG. Then, on or about September 10, 2009, something inside Plaintiff's right shoulder, and upper chest area popped, in a tearing manner. He immediately felt increased pain and a burning sensation. His wing officer wrote an emergency pass and Plaintiff went to the clinic. After waiting for an hour, the nurse told him the doctor would see him later and sent him back to his unit. However, Plaintiff was not called back.

After filing a medical request, on September 17, 2009, Plaintiff was called to see Dr. Ahsan. He explained his symptoms and the doctor told him he would prescribe naproxen. Plaintiff reminded the doctor about his problems with naproxen, and was told that was the only thing he could give him.

Plaintiff was frustrated and in disbelief, so he filed an administrative remedy form, which was not answered. Thereafter, a nurse came to give him naproxen, which he refused, and the nurse told him that the doctor was upset with him for filing the remedy. Plaintiff filed a second remedy form.

On October 17, 2009, Plaintiff received an emergency pass for medical, because he was suffering headaches and dizziness. At the clinic, Plaintiff was told that his blood pressure was high.  It was a weekend, so Plaintiff was told he could see the doctor on Monday.  However, Plaintiff did not see the doctor until Tuesday.  The doctor did not want to treat him, but Plaintiff saw a nurse who took his blood pressure and told him that it was high. She gave him medication for high blood pressure and migraines.  She did not give him medication for his shoulder, and told him he would need to see the doctor for that.

On November 11, 2009, Plaintiff was called to the clinic for a follow up on his blood pressure.  It was still high and his medication was increased.  He was provided a new pill to take in addition to his current medication.  The nurse also gave Plaintiff a week supply of pain medication for his shoulder, "in an act of compassion."  She told Plaintiff that he would have to see a specialist for "good pain medication" and "proper treatment."  Plaintiff states that the pain medication that the nurse gave him did not help.

On November 19, 2009, Plaintiff was called to the clinic, and was told that he was not going to see a specialist or get an MRI done for his shoulder, and was told to stop persisting.  He was told that they had made a decision about Plaintiff's medical treatment and that the decision was final.

Plaintiff submitted another remedy form in December of 2009, which was denied. The remedy was appealed, and the result has not yet been received. In their answer to the appeal, defendants cite to the x-rays, taken before the popping incident of Plaintiff's shoulder, and the EKG.

On January 18, 2010, Plaintiff was placed on the chronic care list due to high blood pressure.

Plaintiff asserts that defendants' actions in not allowing him to see a specialist or get an MRI violate his constitutional rights. He asks for monetary and other relief.

## DISCUSSION

### A.   Standard of Review

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and

1915A, because plaintiff is a prisoner and is proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (in considering a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court refined this standard for summary dismissal of a complaint that fails to state a claim

in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  See id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed. R. Civ. P. 8(d).

7

> relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S. Ct. at 1949-1950 (citations omitted).  The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief.

Id. at 1950.

Thus, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. See id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible.  See id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard

set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly. See Fowler, 2009 WL 2501662 at *5. Now, after Iqbal, the Third Circuit requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S. Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to

---

[2] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

**B.     Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.     Medical Care Claim**

In this case, Plaintiff alleges that he has not received proper medical care, in violation of his constitutional rights.

The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary

11

and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment."

Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197.

In this case, Plaintiff has not alleged facts indicating deliberate indifference on the part of the defendants. Plaintiff notes that he was examined and treated for his injuries, being seen by a nurse and a doctor. He was given x-rays and participated in physical therapy. Through Plaintiff's complaints, the medical staff was able to discover Plaintiff's blood pressure issues, and treat him accordingly. Physical therapy reports submitted by Plaintiff with his complaint demonstrate that Plaintiff was tolerating physical therapy well, and had full range of motion. While the physical therapist recommended that Plaintiff see an orthopedic, each physical

13

therapy report was signed by Dr. Ahsan, so it is apparent that the doctor reviewed the reports, and thus was aware of those recommendations, choosing not to take that route for treatment. That the doctor did not follow the course of treatment preferred by Plaintiff does not render his treatment unconstitutional. While it is conceivable that Plaintiff may have been misdiagnosed, not given the diagnostic tests he would hope for, and/or treatment may not have been to his liking, at most, Plaintiff has alleged facts indicating medical malpractice, which does not violate the Eighth Amendment.

Therefore, this claim will be dismissed, pursuant to 28 U.S.C. § 1915(e), for failure to state a claim upon which relief may be granted. However, the dismissal will be without prejudice to Plaintiff filing a motion to reopen and submitting an amended complaint, in accordance with the attached order, that addresses the deficiencies as outlined above.

**CONCLUSION**

For the reasons set forth above, Plaintiff's medical care claim will be dismissed, without prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2).

An appropriate order accompanies this opinion.

/s/ JOEL A. PISANO
JOEL A. PISANO
United States District Judge

Dated: July 23, 2010